IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

WILLA DEAN KENNEDY

        Debtor

Case No. 3:12-bk-33588-SHB

**MEMORANDUM ON TRUSTEE'S
NOTICE OF INTENT TO SELL ANNUITY AND
<u>OBJECTION TO AMENDED EXEMPTIONS</u>**

**APPEARANCES:**    MAYER & NEWTON
        John P. Newton, Jr., Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee  37919
        Attorneys for the Chapter 7 Trustee

                JIMMIE D. TURNER, ESQ.
          1119 E. Tri-County Boulevard
          Oliver Springs, Tennessee  37840
          Attorney for Debtor

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the following contested matters: (1) the Trustee's Notice of Intent to Sell (Sale Notice) filed by John P. Newton, Jr., Chapter 7 Trustee (Trustee) on September 9, 2015, seeking to sell a portion of the future payments on a Genworth Financial Annuity Contract; (2) the Objection to the Trustee's Intent to Sell filed by Debtor on September 29, 2015, as amended October 31, 2015; and (3) the Trustee's Objection to Amended Exemptions[1] filed on November 2, 2015, as amended February 23, 2016. At an evidentiary hearing held on March 21, 2016, the Court accepted into the record[2] stipulations of undisputed facts submitted by the parties on March 11, 2016; fourteen exhibits introduced into evidence; and the testimony of the Trustee, Debtor, and Jody Kennedy. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

The parties identified eight issues in their Joint Statement filed on March 11, 2016; however, as stated on the record prior to the evidentiary hearing, the issues, as the Court sees them, are as follows:

(1) Whether Debtor is entitled to exempt any additional future annuity payments in excess of the $8,340.00 already allowed exempt under Tennessee Code Annotated § 26-2-103;

(2) If so, what statutory provisions apply to the future payments and in what amounts; and

---

[1] The Trustee initially objected to Debtor's second amended Schedule C, which most recently was amended prehearing on March 11, 2016.

[2] Pursuant to Rule 201 of the Federal Rules of Evidence, all documents of record in this bankruptcy case also are included in the record for the Court's consideration of this contested matter.

(3) If Debtor cannot exempt additional future payments of the annuity after the $8,340.00 claimed as exempt, can the Trustee sell the future payments.[3]

## I. RELEVANT FACTS

This bankruptcy case was filed on September 5, 2012, and the Trustee was appointed. In her original Schedule B, Debtor listed an ownership interest in a "Genworth Financial Annuity Contract #016207884A, Owner: Insurance Company of North America (no cash surrender value) payments to resume July 2020 (life-contingent)" (the Annuity). [Doc. 1.] Debtor valued at the Annuity at $0.00. [*Id.*] She claimed the Annuity as exempt under Tennessee Code Annotated § 26-2-103, with a claimed exemption value of $7,725.00 and a current value of $0.00. [*Id.*] Before her discharge, Debtor filed an amended Schedule C on October 25, 2012, changing the claimed exemption value of the Annuity to $8,340.00 and changed the current value to "[u]nknown." [Doc. 19.] No party in interest, including the Trustee, objected to Debtor's original or first amended Schedule C.

The parties have stipulated that Debtor is the annuitant and has the right to receive payments under the Annuity from Genworth Financial. Additionally, before filing her petition, Debtor sold or assigned her payments under the Annuity to July 18, 2020.

On September 9, 2015, the Trustee filed the Sale Notice, stating that he had received an offer from DRB Capital LLC (DRB Capital)[4] to purchase for $6,108.73 a portion of the future payments under the Annuity as follows:

---

[3] The parties also identified as an issue whether the Trustee should be required to abandon the Annuity as burdensome pursuant to 11 U.S.C. § 554(a); however, such an action requires notice and hearing. There is no such motion pending, and raising abandonment of the asset for the first time in the joint statement of issues to this trial was improper.

[4] At trial, the Trustee testified that he marketed the Annuity payments and received bids through a national sale website, and the offer from DRB Capital was the highest offer he received. Notably, DRB Capital's bid includes not only the purchase price but also all fees and costs associated with the state-court procedure for allowing assignment

2

>       Insurance Company of North America annuity contract #016207884A
> consisting of 1.) 22 payments of $500.00 a month beginning December 18, 2021
> and 2.) 79 payments of $900.00 a month beginning October 18, 2023. All
> amounts are contingent upon the life of the Debtor, Willa D. Kennedy; payments
> will end upon her death.

[Doc. 36.] The Sale Notice expressly reserved Debtor's $8,340.00 exemption by excluding from the proposed sale the first seventeen payments of $500.00 each (totaling $8,500.00) as they are scheduled to be paid beginning July 18, 2020, and continuing through November 18, 2021. [*Id.*]

Debtor filed her objection to the Sale Notice on September 29, 2015, arguing that she claimed an exemption in the entire Annuity, which was part of a structured settlement in the death of her husband and that she should not be forced to wait five years to begin receiving distributions and has the right to receive the $8,340.00 claimed exemption amount before the Trustee's fees and creditors are paid. Debtor thereafter filed an amended Schedule B, changing the value of the Annuity to $14,448.73[5] and changing the description of the property to the following:

> Genworth Financial, Annuity Contract #016207884A, Owner: Insurance
> Company of North America (no cash surrender value) payments *of $500.00 a
> month beginning 7/18/2020 until 9/18/2023; Paymens* [sic] *ot* [sic] *$900.00 a
> month beginning 10/18/2023 and ending 12/18/2017* [sic] *(life-contingent). This
> annuity is result of compensation paid to the debtor who was dependent on her
> husband, for the death of her husband and for the debtor's injury when the pickup
> truck they were riding in was struck by a commercial truck in LaPort, Indiana.
> The annuity was for the wrongful death for debtor's husband as weel* [sic] *as
> personal injuries that she suffered. The annuity is based on the life of debtor who
> was born on Dec. 10, 1945.*

---

of the Annuity payments. That is, DRB Capital bears the cost and risk that a state court will refuse to allow the assignment.

[5] Debtor, through counsel, acknowledged that the stated value was derived by adding the $8,340.00 stipulated exemption under section 26-3-201 and the $6,108.73 that the Trustee has agreed to accept for the portion of future payments proposed to be sold.

3

[Doc. 43.[6]]  With her amended Schedule B, Debtor also filed a second amended Schedule C to add additional exemptions under Tennessee law.  In addition to the original exemption under Tennessee Code Annotated § 26-2-103 for $8,340.00, Debtor added exemptions under § 26-2-111(2)(C) (for $10,000.00), -(2)(B) (for a total of $15,000.00[7]), and -(3) (for $100,000.00).  [*Id.*]

The Trustee timely filed an objection to Debtor's second amended Schedule C (Objection to Amended Exemptions), arguing that the additional exemptions and additional statutory bases claimed do not apply to the Annuity and were not raised in the earlier amendment to Schedule C.  [Doc. 46.]  The Trustee, however, did not object to the $8,340.00 exemption that had previously been claimed under Tennessee Code Annotated § 26-2-103.

After the Court scheduled an evidentiary hearing on the Sale Notice with Debtor's objection and the Objection to Amended Exemptions, Debtor again amended her Schedules B (second amended) and C (third amended) to once more revise the property description by omitting some words and adding others with the following result:

> Annuity Contract #016207884A, Owner:  Insurance Company of North America serviced by Genworth Financial *described as $500 payable monthly to Willa Kennedy on the 18th of each month beginning about Sept. 18, 2023, until the payments increase to $900.00 monthly on or about October 18, 2023.  The payments will continue until her death.*  The annuity is the result of compensation paid to the debtor who was dependent on her husband, for the death of her husband. *The debtor's husband was killed instantly when* a pickup truck he and the debtor were in was struck by a commercial tructk [*sic*] in LaPorte, Indiana.  The annuity was for the wrongful death of debtor's husband.  The annuity is based on life of debtor who was born on December 10, 1945.  *A small portion of the annuity was for minor injuries suffered by the debtor.*

---

[6] Italics are used to reflect the revisions.

[7] Although there is no explanation on the second amended Schedule C for why Debtor duplicated the $7,500.00 exemption under Tennessee Code Annotated § 26-2-111(2)(B), the Court presumes that Debtor is seeking the exemption maximum for both herself and her deceased husband.

4

[Doc. 54.[8]]. Debtor also amended Schedule C for a third time, raising the amount of the claimed exemption under Tennessee Code Annotated § 26-2-111(3) from $100,000.00 to $200,000.00. [*Id.*] For the same reasons stated in his November 2, 2015 objection, the Trustee filed an objection to Debtor's amended exemptions.[9] [Doc. 55.]

Eleven days before the evidentiary hearing, which was one day before the deadline for prehearing filings and the same day that the Court held the initial hearing on the Trustee's Objection to Amended Exemptions #2,[10] Debtor once again amended Schedules B and C. Schedule B was amended to describe the Annuity as follows:

> Annuity Contract #016207884A, Owner: Insurance Company of North America serviced by Genworth Financial described as $500 payable monthly to Willa Kennedy on the 18th of each month beginning about *July 18, 2020*, until the payments increase to $900.00 monthly on or about October 18, 2023. The payments will continue until her death. The annuity is the result of compensation paid to the debtor *for injuries debtor suffered and for the dismissal of a death claim for death of her husband.*

[Doc. 63.[11]] The change to Schedule C likewise revised the property description. [*Id.*]

One week after the March 21 trial, Debtor yet again amended Schedules B and C, changing the value of the Annuity back to $8,340.00 from $14,448.73 and again revising the description to read:

> Annuity Contract #016207884A, Owner: Insurance Company of North America serviced by Genworth Financial described as $500 payable monthly to Willa Kennedy on the 18th of each month beginning about July 18, 2020, until the payments increase to $900.00 monthly on or about October 18, 2023. The

---

[8] Italics are used to reflect the revisions.

[9] The Trustee's objection is titled Objection to Amended Exemptions #2, which misidentifies the amendment to which the objection applied. Also, the parties submitted the various amended schedules as exhibits but misnamed them by failing to recognize that a first amended Schedule C was filed in October 2012. The Court here identifies the amendments accurately.

[10] The third amended Schedule B and fourth amended Schedule C were filed on March 10, 2016. [Doc. 61.] They were re-filed with the required creditor matrix on March 11, 2016. [Doc. 63.]

[11] Italics are used to reflect the revisions.

5

>    payments will continue until her death. The annuity is the result of compensation paid to the debtor for injuries debtor suffered and for the dismissal of a death claim for death of her husband. *[Market value is less than $8,340.00 as shown by the proof at hearing; this amendment is per F.R.C.P. 15(b) & (c) to conform with the proof]*[.]

[Doc. 70.[12]] Debtor did not amend any of the remaining statutory references and values contained in the last pretrial amended Schedule C.

## II. ANALYSIS

### A.    The Trustee's Objection to Debtor's Amended Exemptions

Debtor's bankruptcy estate, consisting of all property and property interests she owned at the time, was created upon the commencement of her case. 11 U.S.C. § 541(a). Notwithstanding that all property is included in the bankruptcy estate, to ensure that debtors retain sufficient property for their fresh starts, certain property interests may be exempted through 11 U.S.C. § 522, and are, in fact, "subtracted from the bankruptcy estate and not distributed to creditors." *In re Arwood*, 289 B.R. 889, 892 (Bankr. E.D. Tenn. 2003) (citations omitted). "[E]xemptions are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors, and 'should be construed in light of the purpose for which [they are] created.'" *In re Lawless*, No. 10-36096, 2012 WL 2974759, at *7 (Bankr. E.D. Tenn. July 20, 2012) (quoting *In re Daley*, 459 B.R. 270, 274 (Bankr. E.D. Tenn. 2011) (alterations in original)); *see also In re Chapman*, 424 B.R. 823, 826 (Bankr. E.D. Tenn. 2010) ("[W]hen it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." (citations omitted)).

In order to claim property as exempt, Rule 4003(a) requires that a statement listing the property and its value, the statutory basis for the exemption, and the amount of the claimed exemption be filed. Parties in interest may object to claimed exemptions within thirty days after

---

[12] Italics are used to reflect the revisions.

6

conclusion of the meeting of creditors or within thirty days after an amendment is filed, whichever is later. Fed. R. Bankr. P. 4003(b)(1). The objecting party bears the burden of proof by a preponderance of the evidence that the exemption is not proper; however, if that burden is not met, a claimed exemption will "retain[] its prima facie presumption of correctness and [will] stand[]." *Lawless*, 2012 WL 2974759, at *7 (citing Fed. R. Bankr. P. 4003; *In re Garbett*, 410 B.R, 280, 284 (Bankr. E.D. Tenn. 2009)). Absent objection, once the deadline to object set forth by Rule 4003(b)(1) passes, "the exemption is final and may not be contested by a party in interest, even if the debtor lacked a colorable statutory basis for claiming the exemption." *In re Reeves*, 521 B.R. 827, 831-32 (Bankr. E.D. Tenn. 2014) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643-44 (1992)).

Because Tennessee has "opted out" of the federal exemptions pursuant to 11 U.S.C. § 522(b), Debtor was required to use Tennessee exemptions. As with the federal exemption statutes, "[t]here is a 'long-standing rule' in Tennessee that its exemption statutes are to be liberally construed." *In re Dunn*, No. 14-33152, 2015 WL 1865567, at *2 (Bankr. E.D. Tenn. Apr. 1, 2015) (citing *In re Hogue*, 286 S.W.3d 890, 894 (Tenn. 2009)).

The Trustee does not object to Debtor's claimed exemption in the amount of $8,340.00 under Tennessee Code Annotated § 26-2-103, which provides debtors with an exemption to the aggregate value of $10,000.00 in their equity interest in personal property. In fact, the Trustee testified at the trial that once Debtor becomes entitled to receive the Annuity payments in July 2020 – at the expiration of the time period for which she previously sold her rights to monthly payments – she will receive payment of her exempted portion in the ordinary course under the Annuity's terms for the first seventeen months for a total of $8,500.00, before the proposed buyer receives any payments.

The Trustee's objection, thus, concerns Debtor's amendments to Schedule C by which she claims exemptions under three subsections of Tennessee Code Annotated § 26-2-111. The pertinent subsections provide, in material part:

> **Additional exemptions – . . . Awards –** . . .  In addition to the property exempt under § 26-2-103, the following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
>
> . . . .
>
> (2) The debtor's right not to exceed in the aggregate fifteen thousand dollars ($15,000) to receive or property that is traceable to:
>
> . . . .
>
> (B) A payment, not to exceed seven thousand five hundred dollars ($7,500) on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or
>
> (C) A payment not to exceed ten thousand dollars ($10,000) on account of the wrongful death of an individual of whom the debtor was a dependent; [and]
>
> (3) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

Tenn. Code Ann. § 26-2-111. As previously stated, Debtor claims a total of $25,000.00[13] under section 26-2-111(2) (consisting of $7,500.00 claimed each for herself and her husband under subsection (2)(B) and $10,000.00 claimed under subsection (2)(C)) and $200,000.00 under section 26-2-111(3). [Doc. 70.]

---

[13] Notwithstanding her claim to a total of $25,000.00 in exemptions under subsection (2), to the extent that Debtor might be entitled to any exemption under that subsection, she is limited by the express statutory language to an aggregate exemption of $15,000.00.

8

Based on the record before it, the Court finds that the Trustee has met his burden of proof, which has not been rebutted by Debtor, that Debtor is not entitled to additional exemptions under the cited provisions of section 26-2-111.

These subsections expressly state that a debtor may claim certain benefits as exemptions as long as the debtor depends or depended for support on the individual that incurred the benefits. Also, these exemptions appear to address the right to receive compensation or property awarded by a court to right a wrong incurred by virtue of a crime, an intentional tort, or negligence by a third party. Specifically, Tennessee Code Annotated § 26–2–111(2)(B) includes awards for bodily injury to a debtor or a dependent of up to $7,500.00; Tennessee Code Annotated § 26–2–111(2)(C) includes awards for wrongful death of someone who supported a debtor of up to $10,000.00; and Tennessee Code Annotated § 26–2–111(3), which does not have a monetary limitation, includes awards for a debtor's future earnings or those of someone on whom the debtor was dependent for support.

Although there is no legislative history concerning § 26-2-111(2)(B), other than the dollar amounts, its language mirrors that of 11 U.S.C. § 522(d)(11)(D),[14] which was "designed to cover payments in compensation of actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings." *In re Haga*, 48 B.R. 492, 495 (Bankr. E.D. Tenn. 1985) (quoting H.R. Rep. No. 595, 95th Cong., 1st. Sess. 362, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6318); *see also In re Chaney*, 151 B.R. 147, 149 (Bankr. W.D. Tenn. 1993). Courts have consistently held that this exemption includes personal bodily injury but does not include compensation for pain and suffering, actual pecuniary loss, or loss of consortium. *See In re*

---

[14] "'[W]here a state has borrowed from similar federal legislation, federal courts may presume that the state legislatures intended what Congress intended.'" *In re Chapman*, 424 B.R. 823, 828 (Bankr. E.D. Tenn. 2010) (quoting *In re Vickers*, 408 B.R. 131, 138 (Bankr. E.D. Tenn. 2009) (citation omitted)).

9

*Chapman*, 424 B.R. 823, 828 (Bankr. E.D. Tenn. 2010) (citing *In re Barner*, 239 B.R. 139, 143 (Bankr. W.D. Ky. 1999)). Accordingly, Debtor can qualify for the exemption under section 26-2-111(2)(B) only to the extent that she can prove that any portion of the Annuity is for her actual bodily injury but not reimbursement of medical expenses, loss of consortium, or pain and suffering.

Tennessee Code Annotated § 26-2-111(2)(C) speaks for itself, allowing an exemption of up to $10,000.00 in an award for the wrongful death of someone on whom the debtor was dependent. Unlike the comparable federal statute, 11 U.S.C. § 522(d)(11)(B), the Tennessee statute does not include a requirement that the award be limited to the extent reasonably necessary for the support of debtor and debtor's dependents. Debtor may claim an exemption under section 26-2-111(2)(C) only to the extent she can prove that a portion of the Annuity is for her husband's wrongful death without regard to need.

Regarding section 26-2-111(3), when determining whether an award is reasonably necessary for support, a court should consider factors including the debtor's present circumstances and income, the future ability to be employed, available assets, and other exempted property. *See In re Chaney*, 151 B.R. 147, 149-50 (Bankr. W.D. Tenn. 1993); *In re Haga*, 48 B.R at 496; *see also Carr v. Arellano (In re Arellano)*, 524 B.R. 615, 623 (Bankr. M.D. Pa. 2015) (analyzing the factors[15] under the identical language of 11 U.S.C. § 522(d)(11)(E)).

---

[15] The *Aralleno* court considered the following factors:

> 1) debtor's present and anticipated living expenses; 2) debtor's present and anticipated income from all sources; 3) the age of debtor and his dependents; 4) the health of debtor and his dependents; 5) debtor's ability to earn a living; 6) debtor's job skills, training and education; 7) debtor's other assets, including exempt assets; 8) the liquidity of other assets; 9) debtor's ability to save for retirement; 10) the special needs of debtor and his dependents; and 11) debtor's continuing financial obligations, such as alimony or support payments.

*Arellano*, 524 B.R. at 623.

Thus, Debtor may successfully claim an exemption under section 26-2-111(3) only to the extent that she can prove that any of the Annuity was to compensate for future earnings.

The Annuity was funded as a structured settlement pursuant to a Settlement Agreement and Full and Final Release Covering All Claims and Rights of Action of Every Description – Past, Present and Future (Settlement Agreement) dated October 26, 1982, through which Debtor settled and agreed to dismiss with prejudice a civil lawsuit "pending in the Porter Superior Court, as Cause No. 82-PSC-9, . . . for damages for personal injuries filed by Willa D. Kennedy, Plaintiff, against Slatile Roofing & Sheet Metal Co., Inc., William G. Morehouse and State of Indiana." [Coll. Trial Ex. 7.]  The Settlement Agreement expressly states, on page one, that the named defendants agreed to pay Debtor "as and for compensation for her personal injuries and pain and suffering and not as compensation for lost income." [*Id*.]  Under paragraph 3 entitled "Release Covering All Claims and Rights of Action," Debtor agreed to "fully compromise her claims and does now hereby fully and forever release, acquit and discharge [the named defendants] from any and all claims arising from the personal injuries and damages sustained by Willa D. Kennedy on or about February 6, 1981." [*Id*.]  Finally, at paragraph 5 entitled "Understanding of Agreement and Risks," Debtor once again agreed that "she accepts said sums as provided herein for the purpose of making a full and final compromise adjustment and settlement of any and all claims for injuries and damages resulting or to result as a consequence of said accident which occurred on or about February 6, 1981." [*Id*.]

Critically, notwithstanding Debtor's various efforts to describe the annuity in her many amended Schedules B and C to try to fit the Annuity into the exemptions available under Tennessee law, there is no mention within the Settlement Agreement that the Annuity was being paid to Debtor for anything other than to settle Debtor's own personal injury claims.  As such,

her attempts to exempt $7,500.00 on her husband's behalf, $10,000.00 for wrongful death, and $200,000.00 for lost earnings are contrary to the express terms of the Settlement Agreement and not within the scope of the cited statutes.

With respect to Debtor's attempt to exempt an additional $7,500.00 for actual bodily injury, the amount provided under the Settlement Agreement is all-inclusive, expressly stating that it includes pain and suffering. As such, because there are no designated amounts specifically for actual bodily injury, the Court finds that Debtor's claimed exemption likewise is not within the scope of Tennessee Code Annotated § 26-2-111(2)(B), which includes only actual bodily injuries and expressly excludes pain and suffering and actual pecuniary loss.

Accordingly, the Trustee's objections to Debtor's additional and amended exemptions are sustained.

### B.    Debtor's Objection to the Trustee's Notice of Sale

Because Debtor has not met her burden of proof as to the value of the Annuity at the time she filed her petition, the Court overrules Debtor's objection to the Trustee's sale. In support of her objection at trial, Debtor argues that the value of the Annuity, at a minimum, is $14,448.73. She also argues that she should not be required to wait until 2020 to receive the $8,340.00 stipulated exempt amount but that she should be paid the amount of her exemption from the sale proceeds. The Court disagrees with Debtor.

As an initial matter, what the Trustee has proposed is akin to the sale of a future note or other similar structured settlement payments, and Debtor's future payments are property of the estate because the "right to the payments and the resulting income stream belonged to Debtor[] as of the petition date." *In re Pipkins*, No. BR 13-30087DM, 2014 WL 2756552, at *4-5 (Bankr. N.D. Cal. June 17, 2014) ("Section 541(c)(1)(A) provides that any interest of a debtor in

12

property becomes property of the estate notwithstanding any provision in an agreement, transfer instrument or applicable nonbankruptcy law that restricts or conditions transfer of such as interest. 11 U.S.C. § 541(c)(1)(A). Under these provisions of section 541, all of Debtors' rights under the annuity, including its payment stream, are property of the bankruptcy estate and subject to Trustee's administration (including a sale of the future payments)."). Thus, the Court rejects Debtor's assertion that she is entitled to payment of her exemption from the proceeds of the Trustee's proposed sale.

Closely related is Debtor's argument that her exemption applies to the present-day value of the future payments under the Annuity such that her exemption precludes the sale by the Trustee for the benefit of creditors. If such were the case, then Chapter 7 trustees could never sell a debtor's right to future payments without including the debtor's exempted payments as part of the sale and paying over to the debtor the claimed exemption amount converted into present-day value. Even if such an argument were viable, the Court finds that Debtor has failed to meet her burden of proving the value of the Annuity as of the petition date.

Debtor argues that the value of the Annuity can be ascertained simply by adding the amount of the stipulated exemption to the amount of the purchase offer; however, there was no substantive evidence entered into the record as to the value of the Annuity on the September 5, 2012 petition date. In fact, the only evidence as to the value of Annuity on that date is the original Schedule B filed by Debtor which lists the value as $0.00. [Doc. 1.] That the Trustee did not object to Debtor's initial value (of $0.00) or her initial exemption in the Annuity in the amount of $7,725.00 or Debtor's first amended valuation of "unknown" and exemption in the amount of $8,340.00 on October 25, 2012 [Doc. 19], is not determinative of the value of the Annuity or its future payments.

13

Similarly, the Court does not accept Debtor's argument at trial that the fair market value of the seventeen payments to be paid to Debtor for her $8,340.00 exemption is only $605.89 based on the difference between the first bid made on August 10, 2015 (which incorrectly included purchase of the first seventeen payments), and the second bid in the amount of $6,108.73 made on August 17, 2015 (which did not include the payments to be made to Debtor for her claimed $8,340.00 exemption). As the Trustee explained at trial, DRB Capital reduced the amount of its offer to purchase the future Annuity payments based on DRB Capital's internal calculations after the Trustee confirmed the requirement that Debtor receive her exemption from the first seventeen payments once the Annuity was once again payable to Debtor. Under the original offer from DRB Capital, it would have received a total of $84,300 as compared to $82,100 it would have received under the sale as proposed to the Court. [Compare Trial Ex. 21 with Trial Ex. 1.] The first offer consisted of 39 monthly payments of $500.00 instead of the 22 in the current offer (with payments to begin seventeen months earlier in the first offer), plus 72 payments of $900.00 per month instead of the 79 contained in the current offer. [*Id.*] The fact that DRB Capital reduced its offer by $605.89 to compensate (1) for reducing the total dollar amount of future payments by $2,200.00, (2) for reducing the number of payments it would be receiving from 111 to 101, and (3) for delaying receipt of the first payment by seventeen months does not equate to a valuation of the Annuity or its future payments; instead, the Court finds it to be a valuation of DRB Capital's risk assessment in accepting payments that are contingent upon Debtor's life at the end of the term rather than the beginning combined with a reduction in the overall dollar amount and number of payments that it will be receiving. Simply, the reduction in the purchase price under these circumstances is not indicative of the fair market value of the

Annuity payments. Moreover, it is in no way evidence of the value of the Annuity on the September 5, 2012 petition date.

Under the terms of the proposed sale, Debtor will start receiving $500.00 monthly payments in July 2020, when she is slated to once again begin receiving payments at the expiration of her own pre-petition assignment of payments. The $500.00 monthly payments to Debtor will continue until her $8,340.00 exemption is satisfied, i.e., through November 2021. In December 2021, DRB Capital will begin receiving the $500.00 monthly payments for 22 months, until October 2023, when the payments increase to $900.00 per month for an additional 79 months. It is of no moment to Debtor's objection that all payments are contingent and will cease in the event Debtor passes away during the 99 months of this sale term.

Debtor also argues that she should receive the value of her exemption now – that she should not be forced to wait until July 2020 for payments. Had Debtor not sold her right to receive Annuity payments through June 2020 by a prepetition assignment, she would have been entitled to receive monthly payments all along such that the Trustee could have sold the Annuity only after allowing Debtor to receive monthly payments in the amount of her claimed exemption. The only reason Debtor is not currently receiving her Annuity payments and will not receive any payments until July 2020 is because *she* sold and assigned them prepetition. The Trustee's proposed sale expressly includes payment of Debtor's exemption immediately upon expiration of the prepetition assignment term. The Trustee's proposed sale is reasonable in that it does not alter Debtor's right to receive payments beginning July 2020, and through the payment of her exemption amount in full.

"The bankruptcy court is in the better position to determine whether the proposed sale [of structured settlement payments] is in the best interest of creditors of the estate." *In re Sparks*, No.

15

03-38563L, 2005 WL 1669609, at *6 (Bankr. W.D. Tenn. July 14, 2005). Based on the record, the Court finds that Debtor has not proved the value of the Annuity as of the September 5, 2012 petition date and she is not entitled to any exemption in the Annuity above the stipulated $8,340.00. In short, the Court overrules Debtor's objection and finds that the proposed sale of the Annuity meets the two standards for nonordinary course sales under § 363(b): (1) business justification and (2) good faith. *See In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993).

### III.  CONCLUSION

For these reasons, the Court sustains the Trustee's objection to Debtor's amended exemptions seeking to exempt the Annuity payments beyond the $8,340.00 stipulated exemption amount and overrules Debtor's objection to the Trustee's proposed sale of future Annuity payments as set forth in the Sale Notice filed September 9, 2015.

An Order consistent with this Memorandum will be entered.

FILED:  June 2, 2016

                                              BY THE COURT

                                              */s/ Suzanne H. Bauknight*

                                              SUZANNE H. BAUKNIGHT
                                              UNITED STATES BANKRUPTCY JUDGE